RAMÓN RIVERA GONZÁLEZ, Appellant, *v.* REGISTRAR OF PROPERTY OF AGUADILLA, Respondent.

No. 1158. Submitted December 1, 1944.—Decided January 25, 1945.

*José Veray, Jr.,* for appellant. *Ciro Malatrasi, Jr.,* Legal Adviser of the Planning, Urbanizing, and Zoning Board of Puerto Rico, as *amicus curiae.* The registrar appeared by brief.

MR. JUSTICE DE JESÚS delivered the opinion of the court.

By a deed of September 17, 1944, executed before Notary José Veray, Jr., Julio Rivera and his wife declared that they were the owners of a rural property situated in the ward Camaseyes of Aguadilla measuring 11 meters in front by 21 in depth. It is bounded on the north and west by a lot belonging to Julio Rivera, on the south by Highway No. 2 which leads from Isabela to Aguadilla, and on the east by María Eugenia Alvarez formerly, now Arturo Molinary. Two one-story frame houses stand on the lot, one of which measures 16 feet in front by 16 in depth, and the other one 16 feet in front by 20 in depth. By that same deed Julio Rivera and his wife segregated from that property a parcel of eleven meters in front by eleven in depth and sold it to Ramón Rivera. The tract of land sold to Ramón Rivera is described as follows:

"Rural, lot situated in the ward of Camaseyes of Aguadilla, measuring eleven meters in front by eleven meters in depth, that is, an area of a hundred and twenty one square meters, bounded on the north and west by Julio Rivera; on the east by Arturo Molinary, and on the south by Insular Highway No. 2 leading from Isabela to Aguadilla. Standing on the lot there is a one-story frame house roofed with zinc."

Ramón Rivera presented the deed in the Registry of Property of Aguadilla, but the registrar refused record thereof for failure to attach a certificate showing that the subdivision plat had been approved as required by the

Puerto Rico Planning, Urbanizing, and Zoning Act and the Subdivision Regulations, and entered instead a cautionary notice.

In the administrative appeal taken by Ramón Rivera it is argued that since this is not the case of a sale of land in an urban area or for urbanization, the registrar erred in refusing recordation.

Section 2 of said Act provides that: " 'Subdivision' means the division or redivision of a lot, tract or parcel of land into two or more parts for sale or for new building, and includes urbanization as heretofore used in Puerto Rican legislation." In the present case it appears from the registry that prior to the approval of the act the two framehouses situated in the main property had already been built, one of which was the one sold to Ramón Rivera; but the division of the parcel of land—the subdivision—was not accomplished until September 22, 1944, when the Act as well as the Subdivision Regulations were already in force. *Sepúlveda* v. *Registrar, ante*, p. 428, decided on January 18, 1945.

In the definition of the term "subdivison," as stated in the Act, parcels of land containing buildings are not excluded from its meaning. Consequently, when on September 22, 1944, Julio Rivera and his wife divided their lot of 231 square meters in order to sell a parcel to Ramón Rivera, they executed the subdivision contemplated by law.

The appellant contends that the Subdivision Regulations apply to urban and not to rural zones or areas. Section 10 of the Act expressly authorizes the Planning Board to adopt regulations which shall govern the subdivision of land in Puerto Rico. And the Subdivision Regulations approved by virtue of this Act provide in Article 1 that any subdivision (*urbanización*) of land "urban as well as rural" shall be governed by the provisions of the Subdivision Regulations. Since there exists such an express

provision in the Subdivision Regulations, we must conclude that, unless it is in conflict with the law, the Board is vested with authority to make the Subdivision Regulations extensive to rural zones. From an examination of the Act it appears that none of its Sections forbids the Board to regulate urbanizations in the rural zone. On the contrary, § 28 of the Act, when referring to § 23 thereof, which deals with the zoning regulations, provides that: "the rural and agricultural areas of Puerto Rico are expressly excluded from the effects of Section 23 of this Act," which a *contrario sensu* means that the rural and agricultural zones in Puerto Rico, in so far as the zoning regulations are not concerned, are subject to the effects of the law. It is of common knowledge that as a general rule, in civilized countries urbanizations are made at some distance of the cities and the regulation of said urbanization comes within the general purpose of the Act contained in § 3 as follows:

"The powers granted in this Act shall be exercised for the general purpose of guiding a coordinated, adjusted and economic development of Puerto Rico which, in accordance with present and future needs and human, physical and financial resources, will best promote the health, safety morals, order, convenience, prosperity, defense, culture, economic soundness and general welfare of the present and future inhabitants, and such efficiency and economy in the process of development and in the distribution of population, of the uses of land and of public improvements as will tend to create conditions favorable thereto."

And said § 10 of the Act, referring to the Subdivision Regulations, provides among other things:

"In adopting regulations and considering subdivisions of land the Board shall be guided by the desirability of avoiding land subdivisions in areas which are unready for such development because of lack of facilities, distance from other built up areas, or other similar social, economic, and physical deficiencies."

It is true that the house standing on the lot sold to Ramón Rivera was built a long time before the approval of

the Puerto Rico Planning, Urbanizing, and Zoning Act and at the outset this circumstance seems to indicate that the transaction described in the deed should not be subject to the Act, to the Subdivision Regulations, nor to the regulations approved by the Attorney General of Puerto Rico under the authority conferred on him by the Act. But it is not difficult to realize that the Subdivision Regulations, irrespective of the construction of the building, provide certain requirements in connection with the lot on which the building is situated, for example, the area of the lot, the distance from the boundary line of adjacent lots, the water supply with which the lot shall be provided in a manner which should meet the requirements of the Department of Health, area of the front, side, and rear yards, etc. If the lot where the house sold to Ramón Rivera is built does not meet the requirements provided by law, there is no doubt that the Planning Board could have in some way required the defect to be corrected, either by acquiring more land or in any other reasonable way under the circumstances. To this effect, Article 51 of the Subdivision Regulations provides that when it is shown to the Board that there are extraordinary circumstances that do not permit full compliance with these Regulations, the Board may modify the application of any Section, provided the public welfare is not impaired. The law does not confer upon the registrar any discretion as to whether he may exempt any person from the obligation imposed by the Act or the regulations. It is his duty to refuse recordation of the document presented if the corresponding plat approved by the Board or the corresponding certificate issued by the Board is not attached. In view of the fact that in this case neither of those papers were presented, the registrar was right in refusing to record the document.

The decision appealed from will be affirmed.